
FILED
2010 Feb-01  PM 04:01
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **VULCAN MARKETING, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:09-cv-00571-AKK** |
| **UNITED FURNITURE** | ) | |
| **INDUSTRIES BOLIVIA, S.A.;** | ) | |
| **GLOBAL TIMBER** | ) | |
| **PRODUCTS, LLC;** | ) | |
| **FORESTWORLD, LLC,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.  BACKGROUND

This is an action brought pursuant to this court's diversity jurisdiction.  28 U.S.C. § 1332(a)(1).  Plaintiff Vulcan Marketing, Inc. ("Vulcan"), a manufacturer sales representative, is incorporated under the laws of Alabama with its principal place of business in Shelby County, Alabama.  Am. Compl. ¶ 1.  According to Vulcan, it entered into an "Exclusive Marketing Contract" with Defendant United Furniture Industries Bolivia, S.A. ("United Furniture") on December 27, 2001, whereby United Furniture agreed to pay Vulcan a 15% commission on sales of

United Furniture's products to various customers.  Am. Compl. ¶¶ 2, 9.  United Furniture sent the contract to Vulcan's headquarters in Shelby County, Alabama for signature, after which it was transmitted back to United Furniture from the same location in Shelby County.  Am. Compl. ¶ 11.

Vulcan also brought suit against Defendant Global Timber Products, LLC ("Global Timber"), which it describes as a "a purportedly dissolved limited liability company" organized under the laws of the State of Washington, and Defendant ForestWorld LLC ("ForestWorld"), organized under the laws of the State of Delaware with its principal place of business in North Carolina.  Am. Compl. ¶¶ 3, 4.[1]  According to Vulcan, United Furniture, Global Timber, and ForestWorld are alter egos of one another.  According to Vulcan, all three entities are controlled by George Satt, Chris Anderson or both; the entities have engaged in the business of manufacturing wood furniture from the same Bolivian facility; and the entities have shared a common vendor account with The Home Depot. Am. Compl. ¶ 14.

According to Vulcan, it successfully obtained customers, including The

---

[1] Of the three named defendants, only ForestWorld has appeared in this action.   On August 20, 2009, Vulcan served the Amended Complaint on United Furniture. However, United Furniture has neither appeared nor answered.  Vulcan has failed to effectuate service on Global Timber.

Home Depot and The Hammock Store, for the defendants but has not received commissions for the sales to those customers.  Am. Compl. ¶¶ 12, 16.  On the Home Depot deal, the defendants were first doing business as "Global Timber," but later changed their "doing business as" name to "ForestWorld," while maintaining the same vendor number from The Home Depot.  Am. Compl. ¶ 13.

On October 8, 2009, ForestWorld filed a motion to dismiss for lack of personal jurisdiction along with an affidavit from Chris Anderson, the "managing member" of ForestWorld.  Anderson Aff. ¶ 2.  According to Anderson, ForestWorld is a separate and distinct entity from Global Timber and United Furniture, does not own any share of Global Timber and does not receive money or products from Global Timber.  Anderson Aff. ¶¶ 11, 12.  ForestWorld does own 99.9 percent of SumaPacha Industrial Sociedad Anonima ("SumaPacha"), a Bolivian furniture manufacturing company, and sells SumaPacha's products to various entities, including The Home Depot.  SumaPacha was formed through a merger between SumaPacha Industrial Sociedad Anonima and SumaQhantati Sociedad Anonima ("SumaQhantati") on September 6, 2007.  Prior to the merger, in November 2006, both entities acquired certain United Furniture assets from banks, which had acquired them in litigation between the banks and United Furniture.  Neither SumaPacha nor SumaQhantati acquired any of United

Furniture's liabilities in these transactions.  Anderson Aff. ¶ 15.

Anderson's affidavit also addresses the nature of the contacts between Forestworld and Vulcan.  Anderson, on behalf of ForestWorld, engaged in meetings and conversations with Vulcan employees regarding whether ForestWorld would establish a relationship with Vulcan similar to that established with United Furniture.    Anderson Aff. ¶ 9(c).  These contacts were primarily directed to Vulcan's staff in Atlanta, Georgia, but also included "occasional" communications by telephone or e-mail with Steve Lambert, Vulcan's CEO. Anderson was unaware of Lambert's precise location when those communications occurred.  Anderson Aff. ¶ 9(a), (b). All meetings with Vulcan employees, including Lambert, took place in Atlanta.  Anderson Aff. ¶ 9(d) - (f).  While admitting that United Furniture had a valid agreement with Vulcan, ForestWorld claims that the agreement was never assigned to it, nor did ForestWorld sign a separate agreement with Vulcan.  Anderson Aff. ¶¶ 9(c), 10.

In response to ForestWorld's motion to dismiss, Vulcan filed a Motion to Transfer Venue to the Northern District of Georgia on November 5, 2009.  The motion did not contradict, or even address, the statements made in the Anderson Affidavit and, instead, focused solely on the propriety of transferring the action to Georgia.  In its reply on November 20, 2009, ForestWorld again requested

4

dismissal or, in the alternative, transfer to the Middle District of North Carolina. The court considers both motions below.

## II.  APPLICABLE STANDARDS

*A.    Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) authorizes a motion to dismiss based on the defense that the court lacks personal jurisdiction.  "The plaintiff has the burden of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant."  *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002).  If the plaintiff sustains that burden, the "burden shifts to the defendant to make a prima facie evidentiary showing, by affidavits or otherwise, that personal jurisdiction is not present. . . .  If the defendant sustains that responsibility, the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint."  *Mercantile Capital, LP v. Fed. Transtel, Inc.*, 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249).  "However, the allegations in the complaint still must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *Mercantile Capital*, 195 F. Supp. 2d at 1247 (citing *S & Davis Int'l., Inc. v. Yemen*, 218 F.3d 1292, 1303 (11th Cir.

2000).

B.      *Venue*

When venue is challenged as improper, the plaintiff bears the burden of

establishing that the selected venue is proper.  *Hemispherx Biopharma, Inc. v.*

*Mid-South Capital, Inc.*, 09-10071, 2009 WL 3698095, at *2 (S.D. Fla. Nov. 5,

2009).  The court must accept as true the allegations of the plaintiff's complaint,

unless controverted by evidence presented by the defendant.  *Id.*  When a party

seeks a transfer under § 1404(a), "[t]he burden is on the movant to establish that

the suggested forum is more convenient."  *Stiefel Labs., Inc. v. Galderma Labs.,*

*Inc.*, 588 F. Supp. 2d 1336, 1338 (S.D. Fla. 2008)

## III.  ANALYSIS

A.      ***Personal Jurisdiction***

"A federal court sitting in diversity may exercise jurisdiction over a

nonresident defendant to the same extent as a court of that state."  *Ruiz de Molina*

*v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1355-36 (11th Cir. 2000)

(citations omitted).  The Supreme Court of Alabama has determined that

Alabama's long-arm provision, Rule 4.2(b), Ala. R. Civ. P., "extends the personal

jurisdiction of Alabama courts to the limit of due process under the United States

and Alabama Constitutions."  *Hiller Invs. Inc. v. Insultech Group, Inc.*, 957 So.2d

1111, 1115 (Ala. 2006).  For the purpose of determining personal jurisdiction, due

process guaranteed under the Alabama Constitution is coextensive with that

guaranteed under the federal Constitution.  *Id*.

The Supreme Court has determined that states may exercise "general" or

"specific" jurisdiction.  A state exercises general jurisdiction when the suit does

not arise out of or relate to the defendant's contacts with the forum.  *Helicopteros*

*Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984).  By contrast,

the state exercises specific jurisdiction when the suit does arise out or relate to the

defendant's contacts to the forum state.  *Id.* at 414 n.8.  In either case, due process

requires that the defendant have "certain minimum contacts with [the forum state]

such that maintenance of the suit does not offend traditional notions of fair play

and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)

(internal citations and quotation marks omitted).  Furthermore, the defendant must

have purposefully availed itself of the forum such that it could reasonably

anticipate being haled into court there.  *World-Wide Volkswagen Corp. v.*

*Woodson*, 444 U.S. 286, 297 (U.S. 1980).

Based on the allegations of the Amended Complaint, Vulcan offers three

separate factual bases under which ForestWorld is subject to personal jurisdiction

in Alabama: (1) ForestWorld's products are marketed to citizens of Alabama

through The Home Depot; (2) ForestWorld had contacts with Vulcan in Alabama; and (3) ForestWorld is an alter ego of United Furniture and, thus, United Furniture's contacts are imputed to ForestWorld.  For the reasons discussed below, Vulcan fails to meet its burden to establish personal jurisdiction over ForestWorld under any of these bases.

### 1.  General Jurisdiction

To support general jurisdiction, a defendant's contacts must be "continuous and systematic."  *Elliott v. Van Kleef*, 830 So.2d 726, 731-33 (Ala. 2002).  Vulcan states that the defendants, including ForestWorld, "have continuously and systematically marketed and sold their products to the citizens of Alabama through Home Depot retail locations in Alabama as well as through the Home Depot website."  Am. Compl. ¶ 15.  ForestWorld, however, disputes that characterization of its business.  According to ForestWorld, its relationship with The Home Depot was negotiated exclusively in Atlanta, Georgia and Missouri; ForestWorld does not sell or ship products to Alabama; ForestWorld sells furniture to The Home Depot, with The Home Depot taking possession and control of the products at the port in Arica, Chile; and ForestWorld has no knowledge or control over where The Home Depot then ships or markets its products.  Anderson Aff. ¶¶ 6-8.

Vulcan has failed to provide affidavits or other evidence establishing that

ForestWorld has continuous or systematic contacts in Alabama aside from its products that may be sold through The Home Depot.  However, that The Home Depot may sell in Alabama ForestWorld furniture it bought in Chile is insufficient to establish that ForestWorld purposefully availed itself of the privilege of conducting business in Alabama, especially in light of The Home Depot's control over how and where ForestWorld's products are marketed.  *See Thompson v. Taracorp, Inc.*, 684 So.2d 152 (Ala. Civ. App. 1996) (Georgia corporation that sold batteries to an Alabama corporation in Georgia had insufficient contacts to establish general jurisdiction).  Consequently, Vulcan has failed to establish that this court may exercise general jurisdiction over ForestWorld.

    2.    *Specific Jurisdiction*

        a.    *Based on ForestWorld's Contacts with Vulcan*

Vulcan alleged that it has communicated with the defendants from its headquarters in Shelby County, Alabama through telephone, mail, and e-mail. Am. Compl.  ¶ 21.  The Anderson Affidavit, however, states that ForestWorld's contacts with Vulcan have taken place exclusively in Atlanta or through Vulcan's Atlanta office, with the possible exception of "occasional communications with Steve Lambert, CEO of Vulcan, by telephone (to Mr. Lambert's cell number) or email."  Anderson Aff. ¶ 9(a)-(g).  Anderson states that he does not know where

Lambert was located at the time of those communications.  Anderson Aff. ¶ 9(b).

In *Steel Processor's Inc. v. Sue's Pumps, Inc. Rentals*, 622 So.2d 910 (Ala. 1993), the plaintiff, an Alabama-based corporation, submitted a bid for a barge repair job to the defendant, a Florida-based corporation, which accepted the bid. The plaintiff fabricated the materials for the repair in Alabama, but the repair job took place exclusively in Florida.  The defendant made several phone calls to Alabama during the repair job and sent three checks to Alabama in payment for the repairs.  The plaintiff then sued in Alabama, claiming that it was owed further funds.  The Supreme Court of Alabama determined that the phone calls and checks were insufficient to establish personal jurisdiction.  *Id.* at 914.

Here, if anything, the Alabama contacts between ForestWorld and Vulcan are even less substantial than those in *Steel Processor's*.  All meetings between the parties took place in Atlanta; ForestWorld communicated almost exclusively with Vulcan's Atlanta staff; and the negotiations between the parties pertained to ForestWorld's potential relationship with The Home Depot, which is also based in Atlanta.  The very limited communications that may have taken place in Alabama,[2] are insufficient to establish the minimum contacts required by due process.

---

[2]Anderson stated in his affidavit that he did not know where Steve Lambert was located at the time of their communications.  Anderson Aff. ¶ 9(c).

Because ForestWorld has met its burden of proving that personal jurisdiction is not present, the burden shifts back to the plaintiff to substantiate the allegations of the complaint by affidavits or other proof; mere reiteration of the allegations of the complaint is insufficient. *Mercantile Capital, LP*, 193 F. Supp. 2d at 1247. However, in response to ForestWorld's Motion to Dismiss, Vulcan presented no evidence whatsoever that ForestWorld's contacts with Alabama were more extensive than presented in the Anderson Affidavit. In fact, to the contrary, Vulcan asserted in a later filing that "the business relationship between Vulcan and the Defendants (and Home Depot, for the Defendants) was primarily run by and through Vulcan's office in Atlanta." Pl.'s Reply Opp'n Def.'s Mot. Dismiss and Resp. Opp'n Def.'s Request Transfer Venue, 3. Vulcan has failed to meet its burden of establishing that ForestWorld's contacts in Alabama were significant enough to establish personal jurisdiction.

          *b.*    *Based on United Furniture's Contacts with Vulcan*

Vulcan further asserts that ForestWorld is an alter ego to United Furniture and Global Timber. In support, Vulcan contends that the companies have engaged in the same business and transactions; the companies have shared the same Home Depot vendor number; and that they are controlled by George Satt, Chris Anderson, or both. Am. Compl. ¶ 14. In contrast, according to ForestWorld, the

three companies are separate and distinct legal entities.  ForestWorld does not own

any part of, nor does it receive any money from, Global Timber.  Anderson Aff. ¶

12.  With respect to United Furniture, ForestWorld claims that at least some of

United Furniture's assets were acquired by Bolivian banks prior to November

2006.  Those assets were then sold to two Bolivian companies, SumaPacha and

SumaQhantati, which merged in September 2007.  ForestWorld, which was

incorporated in January 2006, owns a 99.9 percent share of SumaPacha.  Anderson

Aff. ¶¶ 13-17.  ForestWorld does not dispute that United Furniture, ForestWorld,

and Global Timber have shared or do share some common owners and that the

companies have shared the same Home Depot vendor number.

The Eleventh Circuit has concluded that personal jurisdiction may be based

upon an alter ego theory when a subsidiary's "separate corporate status is formal

only" and has no "semblance of individual identity."  *Meier*, 288 F.3d at 1272

(citing 4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and

Procedure* § 1069.4 (3d ed. 2002)).  However, "courts are reluctant to impute the

activities of the subsidiary to the parent when some semblance of independence

has been maintained."  *Kozial v. Bombardier-Rotax GMBH*, 129 Fed. Appx. 543,

547 (11th Cir. 2005).  Although the allegations in the Amended Complaint raise

questions about the extent to which the three companies have maintained separate

12

corporate status, Vulcan completely fails to meet its burden of establishing jurisdiction by offering competent evidence.  *Mercantile Capital, LP* , 193 F. Supp. 2d at 1247 (once the defendant establishes through competent evidence that it is not subject to personal jurisdiction, the burden shifts to the plaintiff to present evidence substantiating the allegations in its complaint).  Indeed, Vulcan does not even respond to ForestWorld's contentions of separate and distinct legal status.

Under the evidence presented, the court concludes that it does not have personal jurisdiction over ForestWorld.  Nevertheless, for the reasons stated below, the court finds that this case should be transferred to the Northern District of Georgia rather than dismissed.

**B.**   ***Venue***

Under the venue provision relevant to diversity cases, a civil action may be brought in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).  With respect to ForestWorld, Vulcan alleged in its complaint

13

that venue was proper in the Northern District of Alabama because "a substantial part of the actions or omissions giving rise to the claim occurred in this judicial district."  Am. Compl. ¶ 6.[3]

The Eleventh Circuit, interpreting § 1391(a)(2), has stated that, "Only the events that directly give rise to a claim are relevant.  And of the places were the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered."  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, (11th Cir. 2003) (holding that venue was improper in Alabama when contract was executed in Georgia, the non-compete agreement at issue was intended to be performed in Georgia, and the non-compete was designed to protect business and goodwill in Georgia; the fact that one party signed the contract in Alabama and that contract stated that it was to be governed by Alabama law were insufficient to lay venue in Alabama).  Moreover, in determining whether venue is proper, courts must focus on the relevant activities of the defendant rather than the plaintiff.  *Id.*

---

[3]Vulcan further alleged that venue was proper because "the court has pendent or supplemental jurisdiction over all Defendants."  Am. Compl. ¶ 6.  Although some courts recognize "pendent venue" when a substantial part of the events or omissions giving rise to some claims, but not others, occurred within a venue, the decision to apply the principle of pendent venue is a discretionary decision based on multiple factors, such as judicial economy, fairness to the litigants, and convenience of litigants and parties.  *See Beattie v. United States*, 756 F.2d 91, 103 (D.C. Cir. 1985).  More critically, the pendent venue doctrine applies only when a court's federal question jurisdiction is invoked; here, the plaintiff has invoked the court's diversity jurisdiction.  *Bond Safeguard Ins. Co. v. LR Buffalo Creek, LLC*, 8-434, 2009 WL 2601211, at *17-18 (W.D.N.C. Aug. 21, 2009).  Consequently, the court declines to find that venue is proper for ForestWorld based on a pendent venue theory.

at 1371-72.

In essence, Vulcan's Amended Complaint alleges that the defendants breached an exclusive marketing agreement by failing to pay promised commissions or by negotiating directly with customers, specifically with respect to The Home Depot.  It is undisputed that in 2001 United Furniture transmitted a commission contract to Vulcan's headquarters in Alabama, which Vulcan signed and returned to United Furniture. It is also undisputed, however, that ForestWorld was not a signatory to the contract.  In fact, ForestWorld was not formed until 2006.  With respect to ForestWorld, all interactions between ForestWorld and Vulcan appear to have taken place in Atlanta, except for occasional phone calls and e-mails that may have reached Vulcan's CEO in Alabama.  Consequently, if ForestWorld assumed the contract or if an implied contract was created between the two companies, as Vulcan states (Am. Compl. ¶ ¶ 14, 33-36), the acts establishing an implied contract or an assumption of the contract would have occurred in Georgia where the parties met, communicated with one another, and held meetings with The Home Depot.  In addition, any breach of contract likewise occurred outside Alabama when ForestWorld contacted customers outside of the exclusive marketing agreement, thereby depriving Vulcan of commissions, or failed to pay commissions on sales to those customers.  Consequently, this court

determines that venue as to ForestWorld is improper in the Northern District of Alabama.  The court notes also that although Vulcan does not expressly concede that venue is improper, Vulcan failed to present evidence, or legal arguments, establishing that venue was proper in this judicial district with respect to ForestWorld.  Therefore, Vulcan has failed to meet its burden.  *See Hemispherx Biopharma, Inc.*, 2009 WL 3698095 at *2 (plaintiff bears the burden of establishing that the selected venue is proper).

**C.     Transfer**

Section 1404(a) applies when venue in the transferor court is proper and provides that, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Section 1406(a), which applies when venue in the transferor court is improper, provides a court discretion to "transfer such case to any district or division in which it could have been brought . . . if it be in the interest of justice."  28 U.S.C. § 1406(a).  The general presumption is in favor of transfer rather than dismissal.  *See* 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure*, § 3827 (3d ed. 2007) (collecting cases).

In the Eleventh Circuit, a district court lacking personal jurisdiction over the

defendant may transfer venue under § 1404(a) or § 1406(a).  *Roofing & Sheet Metal Servs., Inc.*, 689 F.2d 982, 992 n.16 (11th Cir. 1982).  *See also Goldlawr, Inc. v. Heiman*, 369 U.S. 493, (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed has personal jurisdiction over the defendants or not."); *Aguacante Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978).  Although the defendant is generally the moving party, a plaintiff may also move for transfer.  *See Roofing & Sheet Metal Servs.*, 689 F.2d at 992.  ForestWorld does not dispute that the court has power to transfer this case; rather, ForestWorld argues that transfer should be to the Middle District of North Carolina.   This court determines that transfer to the Northern District of Georgia is appropriate under § 1406(a) because venue is improper in the Northern District of Alabama with respect to ForestWorld.

1.    *Transfer under § 1406(a)*

To transfer a case under § 1406(a), "it is enough simply that the court thinks transfer is in the interest of justice." 14D Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3811 (3d ed. 2007).  The federal court in the Northern District of Georgia has undisputed jurisdiction over

the parties and venue is proper – ForestWorld is clearly subject to personal

jurisdiction in the Northern District of Georgia on the basis of its substantial

contacts with Vulcan and The Home Depot in that state.  Both parties agree that

ForestWorld's relationship with The Home Depot is at the center of this dispute

and that negotiations between Vulcan and ForestWorld as well as those between

ForestWorld and The Home Depot occurred primarily in Atlanta, Georgia.

Transfer thus serves the convenience of witnesses, including those from The

Home Depot and Vulcan's Atlanta office.  Such a transfer will also moot the

personal jurisdiction objection and facilitate the resolution of this dispute on the

merits.  *See Glazier Group, Inc. v. Mandalay Corp*., 6-2752, 2007 WL 2021762, at

*14 (S.D. Tex. July 11, 2007) (transferring a case in which objections to personal

jurisdiction and venue were raised).

2.     *Transfer under § 1404(a)*

Even if this court did have personal jurisdiction over the defendants or

venue was proper in this district, transfer to the Northern District of Georgia

would nonetheless be granted under 28 U.S.C. § 1404(a).  Under § 1404(a), courts

follow a two prong inquiry when determining whether to transfer venue.  First,

courts must establish that the plaintiff could have originally filed the case in the

transfer venue.  Second, courts weigh a number of factors to determine if transfer

is justified, such as "the plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the costs of change, and the public interest." *Stiefel Labs., Inc.*, 588 F. Supp. 2d at 1338.  Vulcan suggests that the balance of factors weighs in favor of transfer to the Northern District of Georgia; ForestWorld concludes that these factors weigh in favor of transfer to the Middle District of North Carolina.

As noted above, the parties do not dispute that Vulcan could have filed this action either in the Northern District of Georgia or the Middle District of North Carolina.  Therefore, the discussion must focus on whether the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer to either district.  Because it is the plaintiff that has requested transfer, the court declines to consider the plaintiff's initial choice of forum as a relevant factor.

a.    *Convenience of the Parties and Witnesses*

The convenience of the parties and witnesses is often considered the single most important factor in the transfer analysis.  *Stiefel*, 588 F. Supp. 2d at 1339.  ForestWorld claims that it would be inconvenient to litigate this matter in the Northern District of Georgia because its principal place of business is in North Carolina and its managing member resides there.  Reply Supp. Mot. Dismiss for

Lack of Personal Jurisdiction and Resp. Opp'n Pl.'s Mot. Transfer Venue, 3-4.

While the court grants that litigating in Georgia rather than North Carolina will

likely be somewhat more inconvenient to ForestWorld (though more convenient

than litigating in Alabama), the Anderson Affidavit establishes that ForestWorld

conducts a significant amount of business in Georgia, particularly with The Home

Depot, which requires travel to Georgia.  Anderson Aff. ¶¶ 8-9

      More importantly, both parties indicate that the majority of witnesses are in

Georgia rather than in North Carolina or Alabama.  Anderson Aff. ¶¶ 8-9

(describing extensive contacts with The Home Depot's Atlanta-based staff as well

as Vulcan's Atlanta-based staff, including Mike Ouellette and Mark Velunti); Pl.'s

Reply Opp'n. Def.'s Mot. Dismiss and Resp. Opp. Def.'s Request Transfer Venue,

3 (noting that "[s]ome of Vulcan's key witnesses are in Atlanta" and that "it is

believed that all of Home Depot's material documents and witnesses are in

Atlanta.").  The court concludes that this factor weighs heavily in favor of transfer

to Georgia.

      *b.*    *Relative Ease of Access to Sources of Proof*

      ForestWorld claims that "many of the documents pertinent to this litigation"

are located in the Middle District of North Carolina.  Def.'s Reply Supp. Mot.

Dismiss for Lack of Personal Jurisdiction and Resp. Opp'n. Pl.'s Mot. Transfer

Venue, 3.  By contrast, Vulcan claims that many of its relevant documents, as well as The Home Depot's, are located in Atlanta.   Pl.'s Reply Opp'n. Def.'s Mot. Dismiss and Resp. Opp'n. Def.'s Request Transfer Venue, 3.  This court agrees with the court in *Stiefel* that this factor is less critical "in the current world of expedited transfer of information."  *Stiefel*, 588 F. Supp. 2d at 1340.  However, given the parties' insistence that ForestWorld's relationship with The Home Depot will be at the center of this dispute, the court concludes that this factor also weighs in favor of transfer to the Northern District of Georgia.

> c.      *Availability of Compulsory Process for Witnesses*

This factor focuses primarily on the possibility of having the testimony of non-party witnesses at trial rather than the convenience of witnesses.  Vulcan contends that Home Depot employees located in the Northern District of Georgia will be "key witnesses."  Pl.'s Reply Opp'n. Def.'s Mot. Dismiss and Resp. Opp'n. Def.'s Request Transfer Venue, 3.  Consequently, being able to compel testimony from these witnesses will likely be important to both Vulcan's case and ForestWorld's defenses.  This factor weighs in favor of transfer to the Northern District of Georgia.

> d.      *Financial Ability to Bear the Costs of Change*

The court considers this factor to be neutral.  There is no evidence before

the court that transfer to either of the suggested districts would impair one or both parties from litigating this matter.

e.      The Public Interest

Finally, it is in the interest of justice to transfer this case to the Northern District of Georgia.  That district would have personal jurisdiction over all of the defendants,[4] which would result in more efficient and cost-effective litigation.  *See Cordis Corp. v. Siemens-Pacesetter, Inc., et al*, 682 F. Supp. 1200, 1202 (S.D. Fla. 1987) (noting that avoiding duplication of litigation favored transfer to California).   In addition, the Northern District of Georgia is the forum with the strongest connection to the cause of action.

Because the court determines that it is in the interest of justice to transfer this case to the Northern District of Georgia, the Defendant's Motion to Dismiss is DENIED and the Plaintiff's Motion to Transfer is GRANTED.

_____

[4]Global Timber has not appeared in this action and Vulcan has thus far failed to effectuate service on that defendant.  However, it is questionable whether the Middle District of North Carolina would have personal jurisdiction over Global Timber.  By contrast, Global Timber's relationship with The Home Depot would make personal jurisdiction highly likely in the Northern District of Georgia.

DONE this 1st day of February, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE